| | |
|---|---|
| DANIEL S. SINCLAIR, JR. | CIVIL ACTION |
| v. | NO. 09-7240 |
| STUDIOCANAL, S.A. | SECTION "F" |

ORDER AND REASONS

Before the Court are two motions: (1) the defendant's motion to dismiss for lack of subject matter and personal jurisdiction; and (2) the plaintiff's motion to continue hearing to permit jurisdictional discovery. For the reasons that follow, the defendant's motion is GRANTED, and the plaintiff's motion is DENIED.

**Background**

This trademark declaratory judgment action arises from a dispute over the mark TERMINATOR. StudioCanal, S.A.,[1] a French company, owns the famous TERMINATOR® movie franchise and trademarks.[2] Daniel S. Sinclair, Jr.[3] has owned, since 2008, a

---

[1] StudioCanal is a French company with its headquarters in Paris, France.

[2] According to StudioCanal, the first TERMINATOR mark was used by its predecessor-in-interest in connection with the release of the motion picture "TERMINATOR", starring Arnold Schwarzenegger in 1984, followed by the sequels, "TERMINATOR 2: JUDGEMENT DAY" and "TERMINATOR 3: RISE OF THE MACHINES", and the recently-released TERMINATOR 4. StudioCanal is the owner of numerous United States and foreign trademark and service mark registrations for the mark TERMINATOR and variations for a variety of goods and services,

business in St. Tammany Parish in which he uses TERMINATOR and also uses a stylized logo incorporating TERMINATOR.

On October 18, 2007 Sinclair applied to register his TERMINATOR mark with the United States Patent and Trademark Office. On March 17, 2009 the patent office granted Sinclair registration number 3,592,326 in connection with pre-moistened cosmetic wipes, antibacterial handwash, pre-moistened medicated wipes, as well as condoms and other contraceptive prophylactics. On June 29, 2009 Sinclair filed another trademark application for certain non-alcoholic and alcoholic beverages; that application is pending.

StudioCanal discovered that Sinclair had obtained a trademark registration for TERMINATOR. On November 4, 2009 counsel for StudioCanal sent a cease and desist letter to counsel for Sinclair, asserting superior rights in its trademark TERMINATOR®  and a willingness to take legal action; the letter provided (in part):

> Any use by your client of the mark TERMINATOR...causes serious injury to out client, confuses and misleads the consuming public..., suggests a connection with our client that your client does not have and dilutes the distinctiveness of our client's TERMINATOR Marks. Moreover, the use by your client of TERMINATOR on condoms, products used in connection with sexual acts or

---

including computer games, posters, magazines, comic books, toy action figures, toys and games, sporting goods and equipment, sleeping bags, model kits, costumes, puzzles, stickers, lunch boxes, trading cards, lighters and cases, leather goods, watches, footwear, clothing and outerwear, eye wear, collectibles and theme park and entertainment services.

[3]Daniel S. Sinclair, Jr. resides in St. Tammany Parish in Louisiana.

other related items tarnishes our client's reputation in that the consuming public would be led to believe that the products being sold emanate from our client or its licensees. U.S. federal and state laws as well as similar laws in other non-U.S. jurisdictions provide significant penalties for such conduct, including injunctive relief, your client's profits and our client's damages and attorney's fees, all of which our client is entitled to.

Our client is willing to take legal action to vindicate its rights and safeguard its investment in the reputation of the TERMINATOR Marks which it has carefully cultivated over the last 25 years....

If possible, our client would prefer to resolve this matter amicably. To that end, we call upon your client to immediately cease an and all use whatsoever of and agree not to use in the future the mark TERMINATOR or any mark confusingly similar to TERMINATOR in connection with all products and advertising and promotion thereof and to withdraw with prejudice or surrender [all] applications or registrations filed by your client for any marks for or containing TERMINATOR or any mark confusingly similar thereto.

We ask that you advise us in writing no later than **Wednesday, November 18, 2009** that your client intends to comply with these demands so that additional immediate steps to enforce our client's rights are unnecessary....

Five days later, on November 9, 2009 Sinclair sued StudioCanal, seeking a judgment declaring that he has the right to use TERMINATOR as his trademark in connection with his business and that such activities do not infringe or violate StudioCanal's rights. Sinclair asserts that StudioCanal has wrongly claimed that he cannot use the mark TERMINATOR in connection with his business and that StudioCanal must be enjoined from making any further wrongful claim, which has damaged or may damage his business and reputation in St. Tammany Parish. In his complaint, Sinclair

invokes this Court's subject matter jurisdiction on various grounds:

> the Federal Declaratory Judgment Act 28 U.S.C. §§ 2201-02 (seeking a declaration regarding an actual controversy); 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act [sic]);[4] 28 U.S.C. § 1338(a)(acts of Congress relating to trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); and 28 U.S.C. § 1332 (citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, excluding interest and costs.

On November 10, 2009 counsel for Sinclair offered to settle the dispute between the parties: Mr. Sinclair would dismiss the declaratory judgment action in exchange for an agreement by StudioCanal that Sinclair's use of his registered trademark TERMINATOR does not infringe any of StudioCanal's trademark rights. StudioCanal apparently declined to settle the matter and now seeks to dismiss the suit on the grounds that the Court lacks subject matter jurisdiction over the case and lacks personal jurisdiction over it. Sinclair opposes the motion to dismiss and requests that the Court permit him to conduct limited discovery relating to personal jurisdiction.

I.
Subject Matter Jurisdiction

Rule 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction. If the Court determines at any time

---

[4]The defendant assumes, and the Court agrees, that the plaintiff's reference to the "Federal Trademark Act" refers to the Lanham Act, 15 U.S.C. §§ 1051, et seq.

that it lacks subject matter jurisdiction, dismissal is required. Fed.R.Civ.P. 12(h)(3); Stockman v. Federal Election Commission, 138 F.3d 144, 151 (5th Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)(citation omitted). The party invoking the Court's jurisdiction "has the burden of proving subject matter jurisdiction by a preponderance of the evidence." Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009)(citation omitted). In resolving disputed facts, the Court must not give plaintiff's allegations a presumption of truthfulness. Id. (citation omitted).

In considering whether to decide or dismiss a declaratory judgment suit, the Court must determine: (1) whether the declaratory action is justiciable; (2) whether the Court has authority to grant declaratory relief; and (3) whether the Court should exercise its discretion to decide or dismiss the declaratory action. See Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2003)(citation omitted).

A.  Justiciability

Article III of the Constitution limits federal court jurisdiction to "cases" or "controversies." U.S. CONST. Art. III, § 2.  Article III is the source of the "actual controversy"

5

requirement of the Declaratory Judgment Act, which provides that:

> [i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Parties that have their legal interests threatened in an actual controversy have standing to sue under the Declaratory Judgment Act. See Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009); see also Collin County, Tex. v. Homeowners Assoc. for Values Essential to Neighborhoods (HAVEN), 915 F.2d 167, 170 (5th Cir. 1990). On the other hand, declaratory judgments cannot be used to seek advisory opinions on hypothetical factual scenarios. See Vantage Trailers, Inc., 567 F.3d at 748 (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)(citation omitted)). "At the same time, however," the Fifth Circuit teaches, "declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." Id. (citing MedImmune, 549 U.S. at 129-130, 127 S.Ct. 764).

There is no bright line rule for distinguishing between cases that satisfy the case-or-controversy requirement and those that do not. Instead, to satisfy the case-or-controversy requirement, a declaratory judgment suit must involve "a definite and concrete dispute." Id. "[T]he question in each case," the Supreme Court writes, "is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127, 127 S.Ct. 764 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). Importantly, "[f]ollowing [the Supreme Court's ruling in] MedImmune, the 'reasonable apprehension of suit' requirement no longer applies.'" See Vantage Trailers, Inc., 567 F.3d at 748; see also SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007)("[t]he Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test"). The Fifth Circuit has further observed that "threats of legal action, alone, cannot create an actual controversy under the Declaratory Judgment Act[; the declaratory judgment plaintiff] must still demonstrate that the controversy was sufficiently immediate and real." Vantage Trailers, Inc., 567 F.3d at 751 (noting that "[a]n unfulfilled threat of action by the patent holder is precisely the type of bullying – warning of legal action but never bringing suit – that the Declaratory Judgment Act sought to prevent").

The Federal Circuit has held that, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without a

license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." SanDisk Corp., 480 F.3d at 1381.

The facts presented by this declaratory action seem to fit squarely within these principles. Even though threats of litigation, without more, cannot create an actual controversy, the plaintiff alleges that he has been using the TERMINATOR mark in connection with his sale of various goods including condoms and that he will continue to do so and, indeed, has another trademark application pending in which he seeks to expand the range of goods he sells with the mark. StudioCanal has made it known that it believes these marks infringe its TERMINATOR® mark and that it intends to litigate that infringement if Sinclair does not cease his use of the mark, cancel the registration and withdraw his pending application; in its letter to Sinclair, StudioCanal suggested that it was willing to take legal action to vindicate its rights in the TERMINATOR mark and "call[ed] upon [Sinclair] to immediately cease any and all use" of the TERMINATOR mark.[5]

---

[5]StudioCanal suggests that it did not explicitly threaten litigation and complains that Sinclair should have at least responded to the letter or waited for the deadline in the letter to expire. The Court disagrees. "The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1363 (Fed. Cir. 2009). Moreover, "conduct that can reasonably be inferred as demonstrating intent to enforce a patent

These facts inform conditions of creating "a substantial controversy between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune</u>, 549 U.S. at 127.[6] StudioCanal's words could reasonably lead one to believe that it is prepared to and willing to enforce its trademark rights; the Declaratory Judgment Act does not require Sinclair to first expose himself to liability before challenging in court the basis for the threat. <u>See</u> <u>id.</u> 128-29, 134 ("[t]he rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III."). Thus, the issue whether Sinclair's sale

_____

can create declaratory judgment jurisdiction." <u>Id.</u>

[6] <u>MedImmune</u> seems to have lowered the bar for determining declaratory judgment jurisdiction in patent cases, or perhaps particularly so in the licensor-licensee context. <u>Hewlett-Packard Co.</u>, 587 F.3d at 1363. But a declaratory judgment plaintiff must still show that the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>See</u> <u>id.</u> (quoting <u>MedImmune</u>, 549 U.S. at 127). Thus, the Federal Circuit insists that "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute." <u>Id.</u> at 1362 (finding declaratory judgment jurisdiction where declaratory judgment defendant took the affirmative step of twice contacting declaratory judgment plaintiff, making implied assertion of its rights under its patent, and declaratory judgment plaintiff disagreed).

9

of goods using his registered mark TERMINATOR infringes or violates StudioCanal's rights in its mark TERMINATOR® presents a live controversy.

## B. Authority

The parties do not dispute that the Court has the authority to decide this declaratory judgment action.

## C. Discretion to Decide or Dismiss

Even when there is an actual controversy and the Court has subject matter jurisdiction, the Court has discretion to decline to exercise its declaratory judgment jurisdiction. The Declaratory Judgment Act grants discretion to district courts rather than an absolute right to litigants. Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"). This discretion has been characterized as "broad, though not unfettered," in that the Court may not dismiss a declaratory judgment action on the basis of "whim or personal disinclination" but instead must balance various considerations before exercising its discretion to dismiss an action. Travelers Insurance Co. v. Louisiana Farm Bureau Federation, 996 F.2d 774, 778 (5th Cir. 1993). The Fifth Circuit has identified seven, nonexclusive, factors to inform the Court's decision to decide or

dismiss a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 388 (5th Cir. 2003) (citing St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994)). Application of the relevant Trejo factors does not support dismissal.

There are no pending parallel proceedings. The lack of a parallel proceeding in a different forum does not require the Court to accept jurisdiction but "it is a factor that weighs strongly against dismissal." Sherwin-Williams, 343 F.3d at 394. Also, the declaratory judgment complaint raises federal questions relating to trademark law. While considerations of procedural fairness might weigh in favor of dismissal, there is no showing that Sinclair is forum-shopping. See id. at 391 ("Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of ... litigation, is not in itself improper

11

anticipatory litigation or otherwise abusive 'forum shopping'"). Finally, efficiency considerations weigh in favor of hearing rather than dismissing the suit. Accordingly, the Court declines to exercise its discretion to dismiss the declaratory action.

## II.
## Personal jurisdiction

When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over the defendant, but need only make a prima facie case if the Court rules without an evidentiary hearing. <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008). In determining whether federal due process permits the exercise of jurisdiction over an out-of-state *patent* owner or infringer, instead of applying regional circuit law, the Court applies the law as interpreted by the Federal Circuit. <u>See</u> <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995). However, when the case concerns trademarks, not patents, the Court applies Fifth Circuit law. <u>See</u> <u>Quick Tech., Inc. v. Sage Group PLC</u>, 313 F.3d 338, 343-46 (5th Cir. 2002)(applying Fifth Circuit personal jurisdiction law to trademark infringement and unfair competition claims where no patent claims were present).[7]

_____

[7]As another Section of this Court has noted, the personal jurisdiction analysis is virtually identical in the Fifth and Federal Circuits. <u>See</u> <u>Parti-Line Int'l, L.L.C. v. Bill Ferrell Co.</u>, No. 04-2417, 2005 WL 578777 (E.D. La. Mar. 4, 2005)(Africk, J.)(applying Federal Circuit law to trademark infringement and

When a nonresident defendant like StudioCanal moves to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of this Court bears the burden of establishing it. See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006), cert. denied, 548 U.S. 904 (2006). The plaintiff may meet his burden by presenting a prima facie case for personal jurisdiction where, as here, the Court decides the matter without an evidentiary hearing. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). The Court will take all uncontroverted allegations in the complaint as true and resolve any conflicts in the plaintiff's favor. Id. The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. Id.; see Jobe v. ATR Marketing, Inc., 87 F.3d 751, 752 (5th Cir. 1996).

The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process. See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).

Louisiana's long-arm statute, La. R.S. 13:3201(B), provides

_____

unfair competition claims that arise out of the same facts as the plaintiff's patent claims). The Court notes that Federal Circuit law defines the personal jurisdiction inquiry in the intellectual property declaratory judgment context, and therefore it is helpful to consider it.

that a Louisiana court "may exercise personal jurisdiction over a nonresident on any basis consistent with the . . . the Constitution of the United States." Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over StudioCanal would offend due process. See Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process Clause limits the Court's power to assert personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994). That is, a nonresident defendant must have meaningful minimum "contacts, ties, or relations" with the forum state in order for jurisdiction to be constitutionally asserted. See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The minimum contacts analysis asks whether the nonresident defendant purposely availed himself of the benefits and protections of the forum. Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant. Regardless of whether the lawsuit is related to the defendant's contacts with the forum,

courts may exercise general jurisdiction over any lawsuit brought against a defendant that has "continuous and systematic general . . . contacts" with the forum state.  <u>See</u> <u>Seiferth</u>, 472 F.3d at 271 (citing <u>Helicopteros Nactionales de Colombia, S.A. v. Hall</u>, 466 408, 413-14 (1984)). "If", on the other hand, "a defendant has relatively few contacts, a court may still exercise specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"  <u>Id.</u>  General jurisdiction focuses on incidents of continuous activity within the disputed forum; specific jurisdiction is more constrained by virtue of a very limited nexus with the forum.  When a defendant has a strong relationship to the litigated claim and the claim has a strong relationship with the forum, the Court will have specific jurisdiction.

A.  General Jurisdiction

The general jurisdiction inquiry is "dispute blind, the sole focus being on whether there are any continuous and systematic contacts between the defendant and the forum."  <u>Dickson Marine, Inc. V. Panalina, Inc.</u>, 179 F.3d 331, 339 (5th Cir. 1999).  Rather than mere "minimum" contacts, "continuous and systematic" contacts must exist between the state and the foreign corporation because "the forum state does not have an interest in the cause of action."  <u>Id.</u>  The Fifth Circuit has noted that the continuous and systematic test "is a difficult one to meet, requiring extensive contacts

between a defendant and a forum." <u>Submersible Sys., Inc. v.</u>
<u>Perforadora Cent.</u>, 249 F.3d 413, 419 (5th Cir. 2001).

For StudioCanal to be subject to general jurisdiction here, it must have had continuous and systematic general contacts with Louisiana. In considering if Sinclair has made a prima facie case that sufficient contacts exist to justify the exercise of general jurisdiction, the Court considers the affidavits and other evidence presented to it. <u>See</u> <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985). Sinclair submits what he suggests is "evidence of StudioCanal's activities in interstate commerce, which interstate commerce does not exclude Louisiana." In a declaration submitted by StudioCanal, Alexis de Rendinger, Vice President of Sales and Marketing for North America, states that StudioCanal has no contacts with Louisiana; StudioCanal is not licensed to do business in Louisiana, does not solicit business in Louisiana, does not have an office in Louisiana, has no employees in Louisiana, does not maintain a bank account or any operations in Louisiana, and does not own property in Louisiana. Moreover:

- StudioCanal licenses the use of its trademarks to certain licensees in the United States;
- StudioCanal does not direct its licensees in their day-to-day activities;
- StudioCanal has no exclusive or non-exclusive licensees residing in Louisiana;
- StudioCanal does not direct its licensees to sell TERMINATOR products in Louisiana;
- The licensees for the TERMINATOR merchandise operate under agreements governed by the law of California, not Louisiana;
- StudioCanal maintains a website but its website offers no products or services for direct sale to consumers who are

residents of the United States;
- StudioCanal does not spend and has never spent funds in Louisiana to advertise TERMINATOR;
- StudioCanal receives proceeds from the renting of a TERMINATOR movie but the statements StudioCanal receives does not break down by state how much proceeds are derived by rentals in certain states;
- For merchandising, StudioCanal operates in the United States through representatives through representation agreements;
- StudioCanal representatives procure licenses which enter into separate licensing agreements with StudioCanal for merchandising;
- For film licensing, StudioCanal operates through distributors, through separate distribution agreements;
- None of StudioCanal's representatives, distributors, or licensees are located in Louisiana.

It is clear that StudioCanal has not had any jurisdictional contacts with Louisiana sufficient to support general jurisdiction; Sinclair has provided no evidence of meaningful minimum contacts between StudioCanal and Louisiana. Sinclair insists that StudioCanal has had contact with Louisiana through various third-party entities involved in filming three movies in Louisiana and the sale of the films here. StudioCanal correctly responds that contact with Louisiana by third-parties with whom StudioCanal has contracted does not constitute contact between StudioCanal and Louisiana; "only the defendant's contacts with the forum state are relevant, not the unilateral activities of another party or a third person." <u>Sunshine Kids Foundation v. Sunshine Kids Juvenile Prod., Inc.</u>, No. 09-2496, 2009 WL 5170215 (S.D. Tex. Dec. 18, 2009)(holding that exercise of jurisdiction over defendants was improper because there was no evidence that activities of licensees were conducted at direction of, or benefit of, licensor).

Accordingly, the fact that merchandise bearing the trademark TERMINATOR is available at retailers in Louisiana, or that StudioCanal financed a film (which involved no activities by StudioCanal in the forum state) and three other films were distributed through third parties in Louisiana hardly rise to the level of systematic and continuous contacts with Louisiana.

The Court finds that Sinclair has failed to make a prima facie case of general jurisdiction -- StudioCanal's contacts with Louisiana do not amount to the "continuous and systematic" contacts required for general jurisdiction. <u>See</u> <u>generally</u> <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408 (1984) (finding no personal jurisdiction over a defendant in Texas, notwithstanding a number of contacts, including purchasing helicopters and parts for seven years, sending pilots to Texas for training, and one visit to Texas by the chief executive officer).

## B. Specific Jurisdiction

The Court may exercise specific jurisdiction over a defendant who has "minimum contacts" with the forum state if maintaining the suit would not "offend traditional notions of fair play and substantial justice." <u>See</u> <u>Luv N' Care</u>, 438 F.3d at 469 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 319 (1945)). The Fifth Circuit has articulated a three-step personal jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state ... whether [he] purposely directed [his] activities toward the forum state or purposely

18

availed [himself] of the privileges of
conducting activities there;

(2)   whether the plaintiff's cause of action
arises out of or results from the
defendant's forum-related contacts; and

(3)   whether the exercise of personal
jurisdiction is fair and reasonable.

Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474
(1985) and Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir.
2002)).  If the plaintiff establishes (1) and (2), then the burden
shifts to the defendant, who must show that it would be unfair or
unreasonable to exercise jurisdiction.  Id.

The sending of a cease and desist letter, without more, is
insufficient to confer personal jurisdiction over a non-resident
defendant.  See Breckenridge Pharm., Inc. v. Metabolite Labs.,
Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006)("principles of fair play
and substantial justice afford [a party] sufficient latitude to
inform others of its...rights without subjecting itself to
jurisdiction in a foreign forum").  There must be other activities
directed at the forum and related to the cause of action besides
the letters threatening an infringement suit.  Red Wing Shoe Co. v.
Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-62 (Fed. Cir.
1998).

Because the nature of declaratory judgment actions in the
patent and trademark contexts, which raise non-infringement,
invalidity, or unenforceability issues, is "to clear the air of

infringement charges", the Federal Circuit has explained, "[s]uch a claim neither directly arises out of or relates to the making [or] selling...arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent."  <u>Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.</u>, 552 F.3d 1324, 1333-34 (Fed. Cir. 2008). Importantly, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides letters threatening an infringement suit."  <u>Id.</u> (citations omitted).  Here is the Federal Circuit again:

> [T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there.  Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement.  In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise exclusive control over the licenseee's sales or marketing activities.

<u>Breckenridge Pharm.</u>, 444 F.3d at 1367.  The Federal Circuit has "consistently required the [declaratory judgment] defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents."  <u>Avocent Huntsville Corp.</u>, 552 F.3d at 1334.  Examples of "other activities include "initiating judicial or extra-judicial patent enforcement

within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." Id. at 1334-35 (holding that sales in the forum, even of products covered by the patent, do not constitute "other activities" sufficient to support a claim of specific jurisdiction over a defendant patentee). Sinclair has failed to make a prima facie showing that StudioCanal engages in other activities in Louisiana that would make the exercise of personal jurisdiction reasonable. Indeed, StudioCanal has submitted evidence that confirms that it has no contacts with Louisiana, including that it has no exclusive licensees in Louisiana.[8]  Because the only relevant contact

_____

[8]Courts routinely hold that the mere existence of a "licensor-licensee relationship is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction." See Sunshine Kids Foundation v. Sunshine Kids Juvenile Products, Inc., No. 09-2496, 2009 WL 5170215 (S.D. Tex. Dec. 18, 2009)(holding that exercise of jurisdiction over defendants improper because there was no evidence that activities of licensees were conducted at direction of, or benefit of, licensor); see also Primesource Building Prods., Inc. v. Phillips Screw Co., No. 07-303, 2008 WL 779906 (N.D. Tex. March 25, 2008)(finding that the court lacked personal jurisdiction over defendant who licensed patent rights to other entities operating in forum, but did not itself manufacture or sell any products); see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998)(declining to find specific personal jurisdiction over a patentee with 34 non-exclusive licenses selling the patented product in the forum state because none of the licenses requires it to defend or pursue infringement actions, and further noting that doing business with a company that does business in the forum state is not the same as doing business in that state).

Sinclair seeks to rely on Akro v. Luker, 45 F.3d 1541 (Fed. Cir. 1995) but Akro is distinguishable. In Akro, the Federal

Sinclair has shown between StudioCanal and Louisiana is the cease and desist letter (and he acknowledges that this is insufficient to warrant exercise of personal jurisdiction), the Court finds that personal jurisdiction is lacking and need not determine whether exercise of jurisdiction would be fair and reasonable.[9]

III.

Sinclair seeks to delay the hearing on the defendant's motion to dismiss in order to permit jurisdictional discovery. StudioCanal counters that jurisdictional discovery is not warranted, and that it is clear from its submitted declaration that StudioCanal lacks any jurisdictional contacts sufficient to support either general or specific jurisdiction. The Court agrees.

_____

Circuit held that warning letters and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for declaratory judgment; however, the Federal Circuit reversed the district court's dismissal for lack of personal jurisdiction because the defendant had an exclusive license with the accused infringer's in-forum competitors. Here, StudioCanal has submitted evidence that it does not have any licensees in Louisiana.

[9]As the Supreme Court has cautioned, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third person." Burker King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(internal citations and quotation marks omitted). StudioCanal has not purposefully availed itself of the privilege of conducting activities in Louisiana.

When a party seeks jurisdictional discovery, the Court has discretion as to the type and amount of discovery to permit. <u>Walk Haydel & Assoc. v. Coastal Power Prod. Co.</u>, 517 F.3d 235, 241 (5th Cir. 2008). The Fifth Circuit teaches that "discovery on matters of personal jurisdiction ... need not be permitted unless the motion to dismiss raises issues of fact." <u>Kelly v. Syria Shell Petroleum Dev. B.V</u>, 213 F.3d 841, 855 (5th Cir. 2000). Further, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." <u>Id.</u> It is clear from the pleadings and papers submitted on this record that this Court lacks personal jurisdiction over StudioCanal, and the plaintiff has failed to point out a genuine issue of fact material to the personal jurisdiction inquiry; thus, the Court declines to delay resolution of the jurisdiction issues.

Accordingly, because the plaintiff failed to make a prima facie showing that the Court has personal jurisdiction over StudioCanal, the defendant's motion to dismiss is GRANTED, and the plaintiff's motion to continue is DENIED.[10] The case is dismissed without prejudice.

New Orleans, Louisiana, April 29, 2010

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10]In light of the dismissal, the Court does not reach the plaintiff's motion to disqualify counsel.